COURT OF APPEALS
DECISION
DATED AND FILED

July 21, 2026

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

**Appeal No.    2025AP2024-CR**

**STATE OF WISCONSIN**

Cir. Ct. No.  2019CF26

**IN COURT OF APPEALS
DISTRICT III**

STATE OF WISCONSIN,

   PLAINTIFF-RESPONDENT,

 V.

STEVEN F. ZASTROW,

   DEFENDANT-APPELLANT.

         APPEAL from an order of the circuit court for Outagamie County: VINCENT R. BISKUPIC, Judge. *Affirmed*.

         Before Stark, P.J., Hruz, and Grogan, JJ.

         ¶1     HRUZ, J. Steven Zastrow appeals an order denying his postconviction motion for additional sentence credit. When Zastrow was arrested and charged with burglary and other offenses in this case, he had been on extended supervision in three other cases that included convictions for forgery and other

offenses (hereinafter referred to as "the forgery cases"). Zastrow remained in custody in connection with both this case and the forgery cases until his extended supervision in the forgery cases was revoked and he was returned to prison. A jury later found Zastrow guilty of the offenses in this case, but the circuit court subsequently vacated those convictions and sentences. The Division of Hearings and Appeals ("DHA") then vacated Zastrow's revocation, and he was again released to extended supervision in the forgery cases. Following a second trial on the offenses in this case, a jury again found Zastrow guilty, and the court sentenced him.

¶2 Zastrow argues that he is entitled to sentence credit in this case for the period of time he spent in custody serving his revocation sentences for the forgery cases because, upon the DHA vacating its order revoking Zastrow's extended supervision, his prior revocation was a nullity and that time spent in custody was therefore connected solely to the course of conduct for which his sentences were imposed in this case. It appears that this particular fact pattern has yet to be addressed in Wisconsin case law.

¶3 We conclude that Zastrow is not entitled to the sentence credit he seeks, given the controlling sentence credit principle set forth in *State v. Beets*, 124 Wis. 2d 372, 379, 369 N.W.2d 382 (1985), that once a defendant starts serving a revocation sentence in one case, it severs the factual connection with the custody in another case. Here, that severance occurred when Zastrow's extended supervision in the forgery cases was revoked and he was returned to prison to serve his revocation sentences. The fact that the DHA later vacated the order revoking his extended supervision does not change the fact that the factual connection was, and remained, severed. Accordingly, we affirm.

2

## BACKGROUND

¶4 On August 10, 2017, prior to the charges being filed in this case, Zastrow was released to extended supervision after serving the confinement portion of his sentences in Outagamie County Case Nos. 2002CF1013, 2005CF284, and 2005CF285—i.e., the forgery cases. Those cases included convictions for forgery, felony theft, and felony bail jumping.

¶5 In the instant case, Zastrow was arrested on December 27, 2018, and, on January 10, 2019, was charged with 1 count of burglary, 17 counts of criminal damage to property, and 8 counts of misdemeanor theft. As a result of the charges in this case, the Department of Corrections ("DOC") placed an extended supervision hold on Zastrow and began revocation proceedings in the forgery cases. The State later filed an information amending the charges in this case to one count of burglary, as a party to the crime, and three counts of concealing stolen property. On September 11, 2019, a jury found Zastrow guilty of all counts.

¶6 On September 17, 2019, an Administrative Law Judge ("ALJ") issued a decision revoking Zastrow's extended supervision in the forgery cases. The DHA sustained that decision on October 15, 2019. After the DHA sustained the ALJ's decision, Zastrow was returned to prison on October 23, 2019. Zastrow had remained in custody from the time of his arrest in the instant case on December 27, 2018, until he was returned to prison in relation to the forgery cases on October 23, 2019, a total of 301 days.

¶7 While Zastrow was serving his revocation sentences in the forgery cases, the circuit court sentenced Zastrow in this case on September 11, 2020, but, on December 8, 2022, the court granted Zastrow's postconviction motion for a

new trial and vacated his convictions and sentences in this case. Between October 11, 2021, and January 3, 2023, Zastrow also challenged the revocation of his extended supervision in the forgery cases. Using the circuit court's order vacating the convictions in this case as support, Zastrow challenged the revocation based on newly discovered evidence.[1]

¶8 On March 7, 2023, an ALJ concluded that the circuit court order vacating the convictions and sentences in this case constituted newly discovered evidence and that the record was insufficient to warrant revocation of extended supervision in the forgery cases. On March 13, 2023, Zastrow was released on a signature bond in this case, but he remained in custody awaiting the DHA's final decision on his revocation. The DHA sustained the ALJ's decision on April 17, 2023. As a result, on April 20, 2023, the DHA vacated the order revoking Zastrow's extended supervision in the forgery cases and released Zastrow from prison. Between the time when Zastrow was returned to prison on October 23, 2019, and when the DHA vacated the order, 1,275 days passed.

¶9 On February 6, 2025, a jury again found Zastrow guilty in this case of one count of burglary, as a party to the crime, and two counts of concealing stolen property.[2] The circuit court revoked Zastrow's bond, and he remained in custody until his sentencing on March 11, 2025, totaling 33 days.[3] The court

---

[1] The ALJ's March 7, 2023 decision noted that Zastrow had made repeated requests to delay the decision in his challenge to the revocation of extended supervision until the circuit court issued a ruling on his postconviction motion in this case.

[2] The State dismissed a third count of concealing stolen property after the circuit court granted Zastrow's motion to suppress evidence relating to that count.

[3] A defendant does not receive sentence credit "for the date on which he or she is sentenced" because the sentencing date "is counted toward the service of the defendant's sentence." *See* **State v. Kontny**, 2020 WI App 30, ¶12, 392 Wis. 2d 311, 943 N.W.2d 923.

sentenced Zastrow to 100 days in jail on each of the concealing stolen property counts, and it ordered that those sentences be served consecutive to each other and to any other sentence Zastrow was currently serving. The court also sentenced Zastrow to eight years of imprisonment on the burglary count, consisting of three years of initial confinement followed by five years of extended supervision, and it ordered that sentence to be served consecutive to the sentences for the concealing stolen property counts.

¶10  The circuit court ultimately awarded Zastrow 320 days of sentence credit on the concealing stolen property counts and 334 days of credit on the burglary count. The court concluded that Zastrow was entitled to 334 days of credit on the burglary count for the period between December 27, 2018, and October 23, 2019 (i.e., from Zastrow's arrest until he was returned to prison on the forgery cases), and the period between February 6, 2025, and March 10, 2025 (i.e., from the second jury verdict to sentencing in this case). The court further concluded that Zastrow was entitled to 320 days of credit on the two concealing stolen property counts for the period between January 10, 2019, and October 23, 2019 (i.e., from the day Zastrow was first charged in this case until he was returned to prison on the forgery cases), and the period between February 6, 2025, and March 10, 2025. The court explained that the period before January 10, 2019, could only be awarded to the burglary count because the sentences for the concealing stolen property counts were imposed consecutive to any other sentence.

¶11  Zastrow moved for an additional 1,275 days of sentence credit for the time he spent in custody serving his revocation sentences in the forgery cases from October 23, 2019, through April 20, 2023. Zastrow argued that he was entitled to those additional days because, when the DHA vacated the revocation of

his extended supervision in the forgery cases, the revocation became "null and void" and had to be "treated as if it never existed." Because the revocation was "nullified," Zastrow argued that the severance of the factual connection between his custody in the forgery cases and the custody in this case that occurred upon his return to prison on October 23, 2019, had to be treated as if it never existed. Zastrow therefore contended that he spent the period between October 23, 2019, and April 20, 2023, in custody in connection with the course of conduct for which his sentences were imposed in this case.

¶12 The circuit court denied the motion. It concluded that, during the relevant time period, there was no factual connection between the conduct for which Zastrow's sentences were imposed in the forgery cases and the conduct for which his sentences were imposed in this case because that factual connection was severed on October 23, 2019, pursuant to **Beets**. It further concluded that the "fact that the revocation was later vacated does not change the course of conduct for which [Zastrow] was confined." Zastrow appeals.

## DISCUSSION

¶13 On appeal, Zastrow seeks the additional 1,275 days of sentence credit for the time he spent serving his revocation sentences in the forgery cases between October 23, 2019, and April 20, 2023. Determining whether Zastrow is entitled to the sentence credit he seeks requires us to apply the sentence credit statute, WIS. STAT. § 973.155 (2023-24),[4] to a particular set of facts, which is a question of law that we review independently. *See State v. Kontny*, 2020 WI App

---

[4] All references to the Wisconsin Statutes are to the 2023-24 version.

30, ¶6, 392 Wis. 2d 311, 943 N.W.2d 923.  In doing so, however, we uphold the circuit court's factual findings unless they are clearly erroneous.  *Id.*

¶14     A defendant is entitled to "credit toward the service of his or her sentence for all days spent in custody in connection with the course of conduct for which sentence was imposed."  WIS. STAT. § 973.155(1)(a).  "[A]ctual days spent in custody" includes "confinement related to an offense for which the offender is ultimately sentenced, or for any other sentence arising out of the same course of conduct" that occurs while a defendant awaits trial, is being tried, and awaits sentencing after trial.  Sec. 973.155(1)(a)1.-3.  "[A]ctual days spent in custody" also includes custody that is in whole or in part the result of an extended supervision hold "placed upon the person for the same course of conduct as that resulting in the new conviction."  Sec. 973.155(1)(b).  When sentences are imposed consecutively, however, dual credit is not allowed, and the time in custody is credited to the sentence first imposed.  *State v. Boettcher*, 144 Wis. 2d 86, 87, 423 N.W.2d 533 (1988).

¶15     WISCONSIN STAT. § 973.155 "is designed to prevent a defendant from serving more time than his [or her] sentence or his [or her] sentences call for."  *State v. Johnson*, 2009 WI 57, ¶31, 318 Wis. 2d 21, 767 N.W.2d 207.  When deciding whether a defendant is entitled to sentence credit, a court makes two determinations.  *Id.*, ¶27.  First, it determines whether the defendant was "in custody" within the meaning of § 973.155(1)(a).  *Johnson*, 318 Wis. 2d 21, ¶27.  A defendant is in custody within the meaning of § 973.155(1)(a) when he or she "is subject to an escape charge if he [or she] leaves the place of detention."  *State v. Obriecht*, 2015 WI 66, ¶25, 363 Wis. 2d 816, 867 N.W.2d 387.

¶16 Second, the court determines "whether all or part of the 'custody' for which sentence credit is sought was 'in connection with the course of conduct for which sentence was imposed.'" *Johnson*, 318 Wis. 2d 21, ¶27 (quoting WIS. STAT. § 973.155(1)(a)). The "course of conduct" "refers to the specific offense or acts embodied in the charge for which the defendant is being sentenced." *State v. Zahurones*, 2019 WI App 57, ¶14, 389 Wis. 2d 69, 934 N.W.2d 905. The custody must be related to the matter for which sentence is imposed, and it must be a factual, not merely a procedural, connection. *See Johnson*, 318 Wis. 2d 21, ¶¶32-33.

¶17 Here, Zastrow was in custody in connection with the course of conduct for which his sentences were imposed for both this case and the forgery cases between December 27, 2018, and October 23, 2019, given that the course of conduct for which he was sentenced in this case also resulted in a hold of his extended supervision that ultimately led to the revocation of that extended supervision in the forgery cases.[5] There is no dispute that Zastrow was also "in custody" for the period for which he seeks credit—between October 23, 2019, and April 20, 2023. Rather, the parties dispute whether that period of custody was "in connection with the course of conduct" for which sentences were imposed in this case. *See* WIS. STAT. § 973.155(1)(a).

---

[5] Although the State does not dispute that Zastrow was entitled to 334 days of sentence credit for the period of time he was in custody between December 27, 2018, and October 23, 2019, it notes that the circuit court may have awarded dual credit on the burglary count and the two concealing stolen property counts even though the counts are consecutive to each other. *See State v. Boettcher*, 144 Wis. 2d 86, 87, 423 N.W.2d 533 (1988) (prohibiting dual credit when sentences are imposed consecutively). Because the State does not challenge the credit the circuit court has already awarded on these counts, we do not address this issue further.

¶18    Pursuant to **Beets**, we conclude that the period Zastrow spent in custody between October 23, 2019, and April 20, 2023, was not in connection with the course of conduct for which Zastrow's sentences were imposed in this case because the revocation of Zastrow's extended supervision in the forgery cases and his return to prison to serve those revocation sentences severed the custody's factual connection to this case.  When a defendant on extended supervision is arrested on a new charge that triggers an extended supervision hold, any connection that might have existed between the custody for the extended supervision hold and the new charge is severed once the extended supervision is revoked and the defendant begins serving his or her revocation sentence.  *See* **Beets**, 124 Wis. 2d at 379; **State v. Davis**, 2017 WI App 55, ¶10, 377 Wis. 2d 678, 901 N.W.2d 488.

¶19    Our supreme court explained its reasoning behind this longstanding rule in **Beets**.  In that case, the defendant was arrested and charged with burglary while on probation for previous drug convictions.  **Beets**, 124 Wis. 2d at 374-75. The defendant's probation was subsequently revoked, and he was sentenced on the drug convictions and returned to prison.  **Id.** at 375.  The defendant then pled guilty and was sentenced to a prison term on the burglary charge, to be served concurrently with the sentence for the drug convictions.  **Id.**  The circuit court denied the defendant's request for sentence credit on the burglary charge for the time between his sentencing for the drug convictions and his sentencing for the burglary. **Id.** at 375-76.

¶20    Our supreme court affirmed that denial, concluding that, "unless the acts for which the first and second sentences are imposed are truly related or identical, the sentencing on one charge severs the connection between the custody and the pending charges." **Id.** at 376, 383.  The court looked to the nature of

parole revocation to reach this conclusion, explaining that a revocation sentence is the punishment for the original crime of conviction, such that revocation was "a continuing consequence of the original conviction from which parole was granted." *Id.* at 378 (citation omitted). The court found this principle equally applicable to probation revocation. *Id.*

¶21 For this reason, the supreme court concluded that the defendant's burglary charge and his drug convictions were not connected because "any days spent in confinement after the revocation of probation and the imposition of sentence arise out of, and are connected not with the burglary, but with the unrelated conduct which resulted in the drug convictions." *Id.* As a result, the court continued, any connection that might have existed between the custody for the drug convictions and the burglary charge was severed once the defendant's probation was revoked because, as of that time, the defendant "was in prison serving an imposed and unchallenged sentence." *Id.* at 379. Because the defendant's custody was solely in connection with his sentence for the drug convictions, the court concluded that the defendant's freedom from confinement "was not in any way related to the viability of the burglary charge," even though the burglary charge remained pending. *Id.*

¶22 For the same reason that the defendant in *Beets* was not entitled to the sentence credit sought, Zastrow is not entitled to the 1,275 days of credit he seeks. The revocation of Zastrow's extended supervision in the forgery cases and his return to prison to serve those sentences severed the factual connection between that custody and the charges in this case because Zastrow's revocation sentences were a continuing consequence of the original convictions in the forgery cases, completely unrelated to the pending charges in this case. Given that Zastrow was serving revocation sentences for the offenses of which he was

originally convicted, the time he spent in confinement between October 23, 2019, and April 20, 2023, was connected solely to the course of conduct that led to his convictions in the forgery cases, not to the charges in this case. *See id.* at 378.

¶23    Zastrow does not dispute that the *Beets* rule originally applied when he was returned to prison to serve his revocation sentences in the forgery cases on October 23, 2019. Rather, he contends that the particular circumstances he faced produced a scenario where that rule does not ultimately apply. Relying on *State v. Lamar*, 2011 WI 50, 334 Wis. 2d 536, 799 N.W.2d 758, and *State v. Harrison*, 2020 WI 35, 391 Wis. 2d 161, 942 N.W.2d 310, Zastrow argues that when the DHA vacated his revocation, the severance of the factual connection between the custody served after his revocation and the charges in this case became "null and void" just like the vacated revocation—it effectively never existed. Citing *Obriecht*, Zastrow also contends that the additional credit must be applied to the confinement portion of his sentences in this case and cannot be held in case of a revocation on a separate sentence, including another revocation in the forgery cases. None of these cases support Zastrow's contentions, however, as the situation presented in this case is factually and materially distinguishable from those cases.

¶24    In *Lamar*, the defendant was arrested and charged with aggravated battery and two counts of misdemeanor bail jumping, all as a habitual offender. *Lamar*, 334 Wis. 2d 536, ¶5. He pled to and was given concurrent sentences on one count of aggravated battery and one count of misdemeanor bail jumping, both with the habitual offender enhancer. *Id.*, ¶¶6-7. After the defendant completed the confinement portion of his sentence for the misdemeanor bail jumping as a habitual offender count, the circuit court granted the defendant's motion to withdraw his plea to the aggravated battery as a habitual offender count, and it

11

reinstated the second misdemeanor bail jumping count, as a habitual offender. *Id.*, ¶¶8-10. The defendant then pled to, and was sentenced for, amended counts of aggravated battery and misdemeanor bail jumping, without the habitual offender enhancer. *Id.*, ¶¶11-12. The sentences were made concurrent to each other but consecutive to any other sentence the defendant was serving—i.e., consecutive to the sentence for the misdemeanor bail jumping as a habitual offender count. *Id.*, ¶12.

¶25 Our supreme court concluded that WIS. STAT. § 973.04 did not entitle the defendant to sentence credit for the time he spent serving the initial concurrent sentences before the circuit court vacated the aggravated battery as a habitual offender sentence.[6] *Lamar*, 334 Wis. 2d 536, ¶¶25-27. The court reasoned that the credit was not for confinement "previously served" in satisfaction of the sentence for the aggravated battery count, but only for the misdemeanor bail jumping as a habitual offender count. *Id.*, ¶36. It reached this conclusion because the sentences imposed for the aggravated battery and the second misdemeanor bail jumping counts were ordered consecutive to the sentence for the misdemeanor bail jumping as a habitual offender count. *Id.*, ¶¶29, 36. The court also concluded that WIS. STAT. § 973.155 was, in fact, the applicable statute, and it held that the defendant was not entitled to the credit he sought pursuant to *Boettcher*'s rule prohibiting dual credit for consecutive sentences. *Lamar*, 334 Wis. 2d 536, ¶¶30-32.

---

[6] WISCONSIN STAT. § 973.04 states: "When a sentence is vacated and a new sentence is imposed upon the defendant for the same crime, the [DOC] shall credit the defendant with confinement previously served."

¶26 In responding to the dissenting opinion's contention that applying WIS. STAT. § 973.04 to this situation, rather than WIS. STAT. § 973.155, honored the intent of both the original and second sentencing courts, the majority opinion noted that applying § 973.04 would ignore the second sentencing court's intent, subverting its authority to impose consecutive sentences, pursuant to WIS. STAT. § 973.15(2), by seeking to honor the intent behind a sentence that was subsequently vacated.[7] *Lamar*, 334 Wis. 2d 536, ¶¶38-40. It is in this context that the majority opinion explained that the vacated sentence for the aggravated battery as a habitual offender count was "nullified and no longer in effect." *Id.*, ¶¶39-40. Because that sentence was vacated, the court held that "the more effective way to honor the intent of the second sentencing court is to actually uphold" its authority to impose consecutive sentences, rather than disregard it. *Id.*, ¶40.

¶27 The concept of what occurs to a sentence when a court vacates it, as the court briefly mentioned in *Lamar*, has no application to Zastrow's case. Instead, and as explained above, this case is controlled by the *Beets* rule that once a defendant starts serving a revocation sentence in one case, it severs the factual connection in another case. *See Beets*, 124 Wis. 2d at 379. Contrary to Zastrow's arguments, the fact that the DHA vacated his revocation did nothing to change the nature of Zastrow's custody during the period between October 23, 2019, and April 20, 2023, which remained solely in connection with his sentences in the forgery cases. *Lamar* does not address, nor does it overrule, this well-established principle from *Beets*, and Zastrow cites no other authority supporting his

---

[7] WISCONSIN STAT. § 973.15(2)(a) states that a circuit court "may impose as many sentences as there are convictions and may provide that any such sentence be concurrent with or consecutive to any other sentence imposed at the same time or previously."

contention that vacating the revocation of a defendant's extended supervision overrides the **Beets** rule and reestablishes the factual connection that was severed.[8]

¶28 Zastrow's attempt to distinguish his case from **Harrison** similarly fails. Zastrow asserts that here, in contrast to **Harrison**, there is a clear factual connection "between the course of conduct for which Zastrow was originally revoked and for which he was sentenced in this case." In **Harrison**, our supreme court referred to **Lamar**'s statement on vacated sentences when addressing whether the defendant in that case was entitled to sentence credit for his extended supervision in two cases after serving sentences in two unrelated cases that were vacated. **Harrison**, 391 Wis. 2d 161, ¶¶12, 38.

¶29 In **Harrison**, the defendant was serving a sentence in two cases when he was convicted of, and sentenced on, separate charges in a different case. **Id.**, ¶¶4-6. The court ordered that the sentences in the third case be served consecutively to the sentences in the first two cases, for which the defendant had not yet finished serving the confinement time. **Id.**, ¶6. The convictions in the third case, however, were subsequently vacated and dismissed. **Id.**, ¶8. The defendant was then convicted of, and sentenced on, a separate charge in a fourth case, but that conviction was vacated and followed by a resentencing. **Id.**, ¶¶9-11. The defendant sought credit on his extended supervision in the first two cases for

---

[8] In addition, we note that Zastrow's *sentences* in the forgery cases were not vacated like the defendant's sentence was vacated in **Lamar**. *See State v. Lamar*, 2011 WI 50, ¶¶9-10, 40, 334 Wis. 2d 536, 799 N.W.2d 758. Rather, it was Zastrow's revocation of extended supervision that was vacated, but his sentences remained in effect while serving the revocation sentences and again upon his release from prison into extended supervision on April 20, 2023. We need not further address any potential difference between vacated sentences and vacated revocation of supervised release, however, given that our conclusion is based on the well-established sentence credit principle in *State v. Beets*, 124 Wis. 2d 372, 379, 369 N.W.2d 382 (1985).

the time he spent serving the sentence in the third case and in the fourth case until the sentence in the fourth case was vacated. *Id.*, ¶12.

¶30 In particular, the defendant argued that his custody during the time for which he sought credit was based on the courses of conduct for which sentences were imposed in the first two cases because "[t]here was no other legal basis for [his] confinement" and his sentences in the first two cases "continued running 'as if there had been no judgment' from the date of sentencing" through the defendant's release from prison. *Id.*, ¶38 (alterations in original). In describing the defendant's argument, the court referred to its statement in *Lamar* that "a vacated judgment of conviction 'lacks force or effect' and the act of vacating 'places the parties in the position they occupied before entry of the judgment.'" *Harrison*, 391 Wis. 2d 161, ¶38 (quoting *Lamar*, 334 Wis. 2d 536, ¶39 n.10). The court noted, however, that the sentences in the first two cases were not ones that were vacated and reimposed, such that WIS. STAT. § 973.04 would apply. *See Harrison*, 391 Wis. 2d 161, ¶¶45, 66. Ultimately, the court held that the defendant was not entitled to the credit he sought for his extended supervision in the first two cases because the time he spent in custody in the third and fourth cases was not in connection with the course of conduct for which sentence was imposed in the first two cases. *Id.*, ¶66.

¶31 As noted above, there *was* a factual connection between the custody in this case and the revocation of Zastrow's extended supervision from December 27, 2018, to October 23, 2019, at which time Zastrow's extended supervision had been revoked and he was returned to prison in the forgery cases. At that point, the factual connection was severed pursuant to *Beets*, and the custody was no longer in connection with the course of conduct for which sentences were imposed in this case, just as there was no factual connection

15

between the defendant's custody in the third and fourth cases and the first two cases in *Harrison*. Again, nothing in *Harrison* suggests the *Beets* rule would not apply in this instance.

¶32 Indeed, if Zastrow's central premise were correct, it seems *Beets* would have been decided differently. Zastrow's argument only works if we accept his contention that the DHA later vacating his revocation also "nullifies" the severance of the factual connection that had occurred, such that the remaining factual connection is solely with the charges in this case. As neither *Lamar* nor *Harrison* support this notion, and the *Beets* severance rule continues to apply despite the vacated revocation order, Zastrow is not entitled to sentence credit on this basis.

¶33 Zastrow's reliance on *Obriecht* in support of his argument that the additional sentence credit must be applied to the confinement portion of his sentences in this case also does not help him. In *Obriecht*, the defendant was arrested and charged with 7 misdemeanors and 1 felony, and he remained in custody for 257 days until he was released on bail. *Obriecht*, 363 Wis. 2d 816, ¶7. Following the defendant's conviction on all counts, he was again taken into custody and remained in custody for 142 days until his sentencing. *Id.*, ¶8. The circuit court sentenced the defendant on the misdemeanor counts, but it withheld sentence on the felony count and placed the defendant on probation. *Id.* At that point, the court granted the defendant 326 days of sentence credit for the misdemeanor sentences. *Id.*, ¶11. The defendant was then in custody in connection with his misdemeanor sentences for 63 days until he began serving those sentences. *Id.*, ¶¶9-10. At this point the court granted an additional 31 days of sentence credit for the misdemeanor sentences, totaling 357 days, but the defendant had actually spent 462 days in custody. *Id.*, ¶11.

¶34 While serving his sentences on the misdemeanor convictions, the defendant's probation was revoked, and the circuit court imposed a sentence to be served consecutively to the misdemeanor sentences and without any sentence credit. *Id.*, ¶12. The defendant had completed the misdemeanor sentences by the time he was released on parole for the felony sentence, but he violated parole and was returned to prison. *Id.*, ¶13 & n.9. Upon his return to prison, the defendant sought the 105 days of additional sentence credit he had not received to reduce his reconfinement time—i.e., the 462 total days he spent in custody less the 357 total days of sentence credit awarded. *Id.*, ¶¶14, 16, 48.[9]

¶35 Our supreme court determined that only the 257-day period and the 142-day period (equaling 399 days) were related to the felony sentence. *Id.*, ¶¶28-29. It explained that when the defendant's parole was revoked, his reconfinement was a continuation of the original felony sentence imposed by the circuit court. *Id.*, ¶35. If the defendant had not received all the sentence credit that could be applied to the felony sentence when that sentence was first imposed, the court concluded that the defendant could receive the remaining available credit when his parole was revoked. *Id.* The court thus concluded that the defendant was entitled "to have the total amount of time he must spend in prison reduced by the amount of time he has spent in custody outside of prison when custody is in connection with the conduct for which sentence is imposed." *Id.*, ¶36.

¶36 Because the circuit court granted only 357 days out of the available 462 days in custody, and only 399 days were in connection with the felony

---

[9] The defendant actually sought 107 days of additional sentence credit, but the court could not determine how he calculated that number. *State v. Obriecht*, 2015 WI 66, ¶17 n.11, 363 Wis. 2d 816, 867 N.W.2d 387.

sentence, the court concluded that the defendant was entitled to only 42 days of credit—but not the full 105—given that the felony sentence was made consecutive to the misdemeanor sentences.[10]  *Id.*, ¶¶37-41.  Because the defendant was continuing his original sentence upon revocation of his parole, the court held that the defendant was entitled to the 42 days of credit "for custody that was in connection with conduct that led to the felony sentence." *Id.*, ¶42.

¶37    *Obriecht* is distinguishable for two reasons.  First, it applied the remaining, available presentence custody credit to a defendant's reconfinement sentence following parole revocation.  The court did not state that the custody credit must be applied to a separate confinement period in a different case.  Here, there is no remaining presentence custody credit to be applied to any of Zastrow's sentences in this case.  Second, and more importantly, the period of custody in *Obriecht* was always in connection with the felony sentence imposed, whereas here that connection was severed upon revocation of Zastrow's extended supervision.

¶38    Although the additional credit that Zastrow seeks cannot be applied to his sentences in this case under *Obriecht*, we recognize and agree with the State that the upshot of *Obriecht* is that if Zastrow were revoked again in the forgery cases, he would be entitled to the 1,275 days of credit he seeks in this case.  *See also* WIS. STAT. § 304.072(2) (stating that if the DOC or DHA determines that an alleged violation of extended supervision is "not proven, the period between the

---

[10] The court explained that after all the sentence credit was awarded, 63 of the 105 days were in connection with the misdemeanor sentences and, because the felony sentence was consecutive to the misdemeanor sentences, the defendant was entitled to only the remaining 42 days. *Obriecht*, 363 Wis. 2d 816, ¶41.

alleged violation and the determination shall be treated as service of the … extended supervision … period").[11]

¶39 In sum, the well-established sentence credit principle in ***Beets*** defeats Zastrow's claim that he is entitled to an additional 1,275 days of sentence credit. Namely, the factual connection between Zastrow's custody for the forgery cases and the custody for the charges in this case was severed upon revocation of his extended supervision and return to prison to continue serving his sentences in the forgery cases. This treatment of his sentence credit is not impacted by the fact that the DHA ultimately vacated the revocation of his extended supervision.

*By the Court.*—Order affirmed.

Recommended for publication in the official reports.

---

[11] In seeming response to the State's point in this regard, Zastrow, in his reply brief, states that he "recognizes that if he receives the credit he seeks in this case, then he is entitled to no such credit in his forgery cases." Notably, Zastrow provides no logic or authority for this type of "election of remedies" notion. We see no basis for sentence credit to apply in such a manner.